IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      KENDRICK SYLVESTER ROBINSON, SR.,      Case No. 10-34516-KRH
                                                   Chapter 13
            Debtor.

## MEMORANDUM OPINION

Before the Court is the Amended Objection to Confirmation (the "Objection") filed by Chapter 13 Trustee Carl Bates (the "Trustee"). The Objection asserts that the Debtor failed to commit all of his projected disposable income to his proposed Chapter 13 plan. An evidentiary hearing on the Objection was conducted on February 2, 2011, at which counsel for the Trustee and counsel for the Debtor presented their respective positions (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement. Having now considered the filings, the evidence presented, the arguments of counsel, and the applicable case law, the Court has this day entered an order requiring the Debtor to amend his form B22C to reflect a household size of three. This Memorandum Opinion sets forth the reasoning for the Court's decision and clarifies the "economic unit" approach the Court has applied to obtain this result.

## Procedural Posture

Kendrick S. Robinson, Sr. (the "Debtor") filed a bankruptcy petition (the "Petition") under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on June 28, 2010 (the "Petition Date"). The Debtor filed along with his Petition the requisite Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income utilizing the Official Form 22C ("Form B22C"). Fed. R. Bankr. P. 1007(b)(6). On June 29, 2010, the Debtor filed his Chapter 13 plan (the "Plan") with the Court. Fed. R. Bankr. P.

3015(b).  The Plan requires the Debtor to pay a total of $27,600 to the Trustee in equal monthly installments over a period of five years.

On August 25, 2010, the Trustee filed an Objection to the Confirmation of the Debtor's proposed Plan pursuant to 11 U.S.C. § 1325(b)(1)(B).  The Trustee asserted that the Plan failed to provide for all of the debtor's projected disposable income to be paid into the Plan during the applicable commitment period (the "First Objection").  An evidentiary hearing on the First Objection was set for February 2, 2011.  On January 26, 2011, the Debtor filed an Amended Statement of Current Monthly Income and Disposable Income Calculation.  The Trustee then filed the present Objection on January 27, 2011, which amended his First Objection to specifically contest various deductions claimed by the above-median Debtor on the amended Form B22C.

## Factual Background

The Debtor heads a well-functioning, albeit atypical, household.  The Debtor's family does not fit the traditional family mold inherently presumed by the term "household size" in form B22C.  The Debtor is an unmarried father of four children, two sons aged 14 and 8 and two daughters aged 7 and 6.  Not all of the children are siblings.  Nonetheless, the Debtor and his children function as a family.  The four children spend various days and nights with the Debtor on a schedule he has been able to arrange with the mothers of the children.[1]  Despite some flexibility in the arrangements, each child spends on average four days and nights with the Debtor in any given week.[2]

---

[1] The Debtor testified that visitation schedules were originally established by the state court for different days, but the Debtor has arranged schedules with the mothers of his children in order to have all of the children together in his home at the same time as often as possible.

[2] The Debtor testified that his 14-year-old son often spends the entire week with him, but he always spends Friday night through Monday night in the Debtor's home.  The Debtor's 8-year-old son and 7-year-old daughter also stay with him Friday night through Monday night, and sometimes on Tuesday and Wednesday nights depending on the

2

The Debtor alone would require only a one-bedroom apartment. In order to accommodate the living needs of his children, the Debtor maintains a three-bedroom apartment—one bedroom for himself, one bedroom for his boys, and one bedroom for his girls. The Debtor is subject to and is making court-ordered child support payments to the mothers of the four children in the aggregate amount of $1,442.87 per month.[3] The Debtor has never claimed any of the children as a dependent on his tax return in the past, but he hopes to be able to claim two of them this year by agreement with the respective mothers of those two children. The Debtor's youngest son has significant health complications and requires bi-weekly doctor visits and weekly urologist visits, as well as prescription medication. The Debtor is solely responsible for all of these medical costs. While the medical expenses for the Debtor's youngest son totaled $1,100 in January 2011, the Debtor testified that they more typically average between $250 and $400 per month depending on the procedures required.[4]

The Debtor's current monthly income for the six months immediately preceding the Petition Date was $8,091.42.[5] The Debtor claimed a household size of one on line 16 of his amended Form B22C. When annualized, the Debtor's current monthly income figure greatly

---

medical needs of the 8-year-old discussed *infra*. The Debtor's 6-year-old daughter always stays with him on Thursday nights and on Saturday and Sunday nights, and on additional days as well.

[3] The Debtor has been subject to child support orders for at least the past six years. This figure includes certain prepetition arrearages for which the Debtor is responsible. The Debtor had double counted these arrearages on his Form B22C by including them in this figure and again on line 49. *See* note 8 *infra*.

[4] The January 2011 expense figure accounted for an ultrasound procedure, for which the Debtor had to pay out-of-pocket.

[5] The term "current monthly income" is defined in § 101(10A) of the Bankruptcy Code. The Debtor testified that this figure, which annualizes to $97,097.04 on line 21 of the Debtor's Form B22C, was higher than the amount he expects to earn over the next year. The higher figure resulted from increased overtime at work that his employer has indicated will not continue. The Debtor testified that he expects to earn approximately $70,000 in the coming year.

exceeds the median family income for a household of one in Virginia.[6] As this designation of household size classified the Debtor as an above-median debtor, the commitment period applicable to the Debtor's case under 11 U.S.C. § 1325(b)(4) was determined to be 60 months and the Debtor was required to calculate his deductions from current monthly income for "those amounts reasonably necessary to be expended" by utilizing Part IV of form B22C pursuant to 11 U.S.C. §§ 1325(b)(3) and 707(b).[7]

In an attempt to accurately reflect the Debtor's atypical household composition, Debtor's counsel mixed and matched certain figures from the Standards of the Internal Revenue Service when completing Part IV of Form B22C. It is to the calculation of these deductions that the Trustee has objected. On Line 24A, counsel for the Debtor included a deduction of $1,633. This deduction is derived from the IRS National Standards for Allowable Living Expenses for a family of five. In contrast, on Line 24B, counsel for the Debtor included a deduction of $60. This deduction is derived from the IRS National Standards for Out-of-Pocket Health Care for a family of one. On Lines 25A and 25B, counsel for the Debtor included $573 for non-mortgage expenses and $986 for rent expense respectively; both of these figures represent the IRS Housing and Utilities Standards for a household of five.[8]

---

[6] The Census Bureau Median Family Income by Family Size data published by the U. S. Trustee Program on its official web page indicates that the median family income for a family of one in Virginia for the period between November 1, 2010 and March 14, 2011 was $49,448. The median family income for a family of five in Virginia for the same period was $93,086.

[7] Part IV of form 22C includes (i) deductions derived from the Standards of the Internal Revenue Service, (ii) deductions for additional allowed living expenses, and (iii) certain deductions for debt payment.

[8] The Trustee objected to certain figures on other lines of the Debtor's Form B22C as well. None of the other objections relate to the issue addressed by the Court in this Memorandum Opinion. Debtor's counsel acknowledged at the Hearing that certain of these other entries, such as the amounts claimed for required payments on pre-petition priority claims on Line 49, required revision. The Trustee withdrew certain other of his objections upon hearing the Debtor's testimony in support thereof, the Trustee being satisfied with the Debtor's explanation.

After incorporating all relevant deductions, Debtor's counsel calculated a monthly disposable income pursuant to 11 U.S.C. § 1325(b)(2) at a negative $705.57.[9] The Debtor's Plan proposes a payment of $460 per month to the Trustee with an estimated 8% distribution to unsecured creditors. The Trustee objected to the Plan arguing that the Debtor's Form B22C artificially overstated the amounts that the Debtor was permitted to deduct as his expenses "reasonably necessary to be expended" as defined in § 1325(b)(3) and thus understated the amount of projected disposable income that should be made available to pay unsecured creditors.[10]

### Analysis

The issue before the Court is the proper determination of the Debtor's household size for purposes of calculating the Debtor's projected disposable income in his Chapter 13 case. The related terms "household" and "household size" appear frequently on form B22C (as derived from 11 U.S.C. §§ 1325(b) and 707(b)(2)) and are critical to the calculations necessary for the determination of (i) the applicable commitment period, (ii) the debtor's current monthly income, and (iii) the proper deductions from that income for expenses reasonably necessary to be expended in order to derive (iv) disposable income. Despite the crucial role the terms "household" and "household size" play in these important calculations, they are nowhere defined in the Bankruptcy Code.

Over the years, bankruptcy courts have developed three different approaches for determining the "household size" of a given debtor. For the reasons explained more fully herein,

---

[9] Disposable income is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2).

[10] The Trustee argues that the Debtor should be required to claim a household size of one, which when applied would yield a calculation of monthly disposable income of $1160. Thus the Debtor's proposed plan payments fall short of the statutory requirement.

5

the Court will adopt the "economic unit" approach[11] as it most accurately accounts for the many and varied family arrangements that bankruptcy courts commonly encounter.

# I

Every debtor who seeks relief under Chapter 13 must file a plan. 11 U.S.C. § 1321. Section 1322 of the Bankruptcy Code sets forth the permissible contents of a Chapter 13 plan. These permissible provisions are qualified by the requirements for plan confirmation found in 11 U.S.C. § 1325. When either the trustee or a holder of an unsecured claim objects to a plan proposed by a debtor, the bankruptcy court may not confirm the plan unless either (i) the plan provides for payment of the objecting claimant's claim in full or (ii) the plan provides for the payment to unsecured creditors of "all of the debtor's *projected disposable income* to be received in the applicable commitment period". 11 U.S.C. § 1325(b)(1) (emphasis added).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[12] drastically overhauled 11 U.S.C. § 1325(b). Prior to the enactment of BAPCPA, a debtor's "disposable income" was defined, in part, as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2) (2005).[13] This definition required bankruptcy courts to subjectively determine on a case by case basis what constituted "income which is received by the debtor" and what claimed expenses were "reasonably necessary" for the maintenance and support of the debtor and the dependents of the debtor.

---

[11]  See generally *In re Morrison*, 2011 WL 65737 (Bankr. M.D.N.C. January 10, 2011) wherein Judge Waldrep coined the term for the approach which this Court will also adopt.

[12]  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109–8, 119 Stat. 23 (Apr. 20, 2005).

[13]  Unless otherwise indicated, all references to the United States Code refer to the current version.

6

BAPCPA substituted an objective standard in place of the subjective case by case approach for purposes of calculating the "disposable income" of above median debtors. The current version of 11 U.S.C. § 1325(b)(2) now defines "disposable income," in pertinent part, as "*current monthly income* received by the debtor . . . less *amounts reasonably necessary to be expended* for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2) (emphasis added). Congress then further defined "current monthly income" for all debtors in § 101(10A) of the Bankruptcy Code[14] and limited the meaning of "amounts reasonably necessary to be expended" for above-median debtors in § 1325(b)(3) of the Bankruptcy Code.[15] For above-median debtors, the "amounts reasonably necessary to be expended . . . [must] be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3).

Accordingly, in calculating the minimum amount of "disposable income" that must be contributed to a plan, Chapter 13 now limits above-median debtors to the deductions incorporated by the means test of 11 U.S.C. § 707(b).[16] Above-median debtors are required to calculate their necessary living expenses by using the Internal Revenue Service's National Standards, Local Standards, and Other Necessary Expenses tables. These tables set limits on the amounts an above-median debtor is permitted to deduct from current monthly income based on

---

[14] "Current monthly income" is the average monthly income from all sources received by the debtor in the six months preceding the filing of the petition. 11 U.S.C. § 101(10A).

[15] Whether a debtor qualifies as an "above-median debtor" is determined by comparing the debtor's current monthly income, when multiplied by 12, to the median family income for a household of the same size as the debtor in the debtor's applicable state. 11 U.S.C. § 1325(b)(3). Notably, § 1325(b)(3) requires the debtor to specify the size of his or her household in order to determine whether he or she qualifies as an above-median debtor. The Debtor in this case would be above-median whether he indicated a household of one (as he did) or a household of five. *See* notes 5 and 6 *supra*.

[16] The means test is used primarily to determine whether a debtor who files under Chapter 7 may remain in that chapter or whether the debtor's case should be dismissed or converted to Chapter 13 or 11. Section 707(b) was one of the most fundamental alterations made by BAPCPA.

the debtor's household size. As the plain language of BAPCPA[17] mandates that an above-median Chapter 13 debtor calculate projected disposable income based on current monthly income minus the deductions permitted by the IRS tables for the debtor's household size, it is critical to know the size of a given debtor's household.

## II

### Census Bureau "Heads on Beds" Approach

The first of the three approaches that bankruptcy courts have utilized to determine household size is the definition employed by the Census Bureau. That definition provides that "[a] household consists of all the people who occupy a housing unit." U.S. Census Bureau, *Current Population Survey (CPS) – Definitions and Explanations*, http://www.census.gov/population/www/cps/cpsdef.html. This "heads on beds" approach depends solely on the number of residents in a structure and is unconcerned with the presence of a familial or economic relationship between the individuals. Several courts adhere to this method. *See, e.g.*, *In re Epperson*, 409 B.R. 503, 507 (Bankr. D. Ariz. 2009); *In re Bostwick*, 406 B.R. 867, 872–73 (Bankr. D. Minn. 2009); *In re Smith*, 396 B.R. 214, 217 (Bankr. W.D. Mich. 2008); *In re Ellringer*, 370 B.R. 905, 910–11 (Bankr. D. Minn. 2007).

In *Ellringer*, the court held that the Census Bureau's definition of household should be used when conducting the means test because 11 U.S.C. § 101(39A)(A) defines "median family income" by referring to the Census Bureau's statistics. *Ellringer*, 370 B.R. at 910–11. Furthermore, the court stated that Congress specifically used the term "household" rather than the term "family." *Id.* In *Smith*, the court found that it had to apply the plain meaning of

---

[17] The Supreme Court's recent decision in *Lanning* shows that, despite the apparent bright-line test for calculating the debtor's "projected disposable income" in the plain language of 11 U.S.C. § 1325(b)(1), Congress did not intend to prevent bankruptcy courts from exercising discretion in applying the terms for purposes of plan confirmation. *See Hamilton v. Lanning*, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010).

8

"household" when Congress had not defined the term. *Smith*, 396 B.R. at 216. The court then turned to Webster's Third New International Dictionary (1986) and found that "household" could mean either "all of the persons who use a particular structure as their dwelling space" or "only those persons who live together and who are also related by blood or marriage." *Id.* The court in *Smith* concluded that the Census Bureau's definition of household was more appropriate, because 11 U.S.C. § 522(d)(3) uses the terms "family" and "household" differently *Id.* at 217.

### Internal Revenue Service Dependents Approach

The second approach utilized by bankruptcy courts for determining the size of a debtor's household relies on the limitations established by the means test set forth in Chapter 7 of the Bankruptcy Code. Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code provides that the above-median debtor's monthly expenses must be the amounts permitted by the Internal Revenue Service's National Standards, Local Standards, and Other Necessary Expenses tables for the area in which the debtor resides in effect on the date of the debtor's petition "for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

Courts which adhere to this dependents approach for determining household size hold that any definition of "household" used for means test calculations must be reconciled with the restrictions of 11 U.S.C. § 707. In *In re Napier*, the court held that "[t]o the extent that Official Form B22C indicates that Debtors may include [non-dependents] in the means test calculation, it must yield to the plain language of § 707(b)(2), which only allows Debtors to include dependents." *In re Napier*, No. Civ. A. 06–02464–JW, 2006 WL 4128358, at *2 (Bankr. D.S.C. Sept. 18, 2006). Similarly, the court in *In re Law* held that, once the court is directed to 11 U.S.C. § 707(b)(2)(A)(ii)(I) for above-median Chapter 13 debtors, "it becomes abundantly clear

9

that [such debtors] may only claim expenses for themselves, their dependents, and their spouse (in a joint case) if the spouse is not otherwise a dependent." *In re Law*, No. 07–40863, 2008 WL 1867971, at *5 (Bankr. D. Kan. Apr. 24, 2008). The debtor is then limited to taking deductions on form B22C only for the persons the debtor claims as dependents on his or her tax return. *Cf. In re Frye*, 440 B.R. 685, 687 (Bankr. W.D. Va. 2010) ("The Court . . . adopts the position that in order to determine whether a child qualifies as a dependent . . . a court should look at the IRS dependency test as stated in IRS Publication 501.").

Economic Unit Approach

The third method that bankruptcy courts have utilized to determine the size of a debtor's household is the economic unit approach. This methodology measures the size of the debtor's household by the number of individuals in the home who act as a single economic unit. As the court in *In re Morrison* explained:

> [A] household will include individuals who are financially dependent on a debtor, individuals who financially support a debtor, and individuals whose income or expenses are inter-mingled or interdependent with a debtor.

*In re Morrison*, 2011 WL 65737, at *6 (Bankr. M.D.N.C. January 10, 2011). "In its breadth, the third approach falls between the first two approaches." *Id.* This approach aims to more accurately portray the economic situation of a given debtor, whether that leads to increasing or decreasing the size of the debtor's "household" for purposes of the form B22C calculations.

For instance, the court in *In re Herbert* permitted a debtor to claim a household size of eleven because for many years the debtor had financially supported his girlfriend, their daughter, and the girlfriend's eight other children. *In re Herbert*, 405 B.R. 165, 170 (Bankr. W.D.N.C. 2008). The court found that rather than being "contrived or concocted for the purpose of this bankruptcy filing," the financial support of these ten other individuals was "simply the fact of

10

this debtor's life." *Id.* The court in *Herbert* criticized both the "heads on beds" approach and the IRS dependents approach for failing to accurately characterize family fiscal structures:

> While this court agrees with the *Ellringer* court to the extent it recognizes that there will be instances in which unrelated, non-dependent individuals should be treated as part of a household, the "heads on bed" approach adopted by that court is too broad because it includes anybody who may be residing under the debtor's roof without regard to their financial contributions to the household or the monetary support they may be receiving from the debtor. . . . On the other hand, the court declines to adopt the standards of the Internal Revenue Manual for purposes of determining household size because they do not account for the situation in which a debtor may be supporting an individual without declaring that person as a dependent on his tax return.

*Id.*, at 169.

The court in *In re Jewell* took a similarly realistic view toward the debtor's true financial situation. In that case, the debtors lived with their four children: two dependent children, and two adult children. *In re Jewell*, 365 B.R. 796, 797–98 (Bankr. S.D. Ohio 2007). One of the adult children had three children of her own who also resided with the debtors. As this adult child was not working or otherwise contributing financially, the debtors provided these four individuals with food, shelter, and funds for medical care. *Id.* at 798. The other adult child lived in the home, but he neither contributed towards expenses nor received financial assistance from the debtors. *Id.* The court held that the debtors were entitled to claim a household size of eight, as the former adult child was part of the debtors' economic unit due to the debtors' support for her and her children, while the latter adult child was "merely a head on a bed." *Id.* at 801–02. The court in *In re Jewell* rejected both the heads on beds approach and the dependents approach advanced by most other bankruptcy courts as being inconsistent with the purpose of the Bankruptcy Code:

> [T]he purpose for which the Bureau of the Census determines a household is radically different (i.e., determining the number and demographics of those residing in particular areas of the United States) and bears no relationship to the

11

      purpose of the Official Form B22A. . . . [T]he purpose of the Internal Revenue Code is to create income for the government . . . [while t]he policy of the Bankruptcy Code is to provide the honest but unfortunate debtor with a fresh start.

*Id.* at 800–01.

### III

      This Court agrees with the analysis set forth in *Morrison*, *Herbert*, and *Jewell* and hereby adopts the economic unit approach.  When interpreting the meaning of terms which Congress has not defined, a court must use the definition of the term which would best serve the goals of the statute in which the term is found.[18]  In this case, 11 U.S.C. § 1325(b) (and form B22C, which applies it) seeks to insure that all of the debtor's projected disposable income is applied to making payments to unsecured creditors under the debtor's Chapter 13 plan.  11 U.S.C. § 1325(b)(1)(B).  The debtor's projected disposable income is calculated, in part, by deducting expenses tiered according to the size of the debtor's household.  The appropriate definition of the debtor's "household" must be the one which leads to the most accurate and realistic calculation of the debtor's projected disposable income given the economic realities of the debtor's family circumstances.

      Neither the Census Bureau "heads on beds" approach nor the IRS dependents approach reliably results in an accurate calculation of a debtor's projected disposable income.  The "heads on beds" approach would permit a debtor to subtract deductions from the debtor's current monthly income for individuals who are fiscally independent of the debtor.  Thus, it would permit some debtors to avoid paying their unsecured creditors the true amount of their disposable

---

[18] "In determining the ordinary meaning of a word, a court should not consider the term in a vaccuum [sic].  The word must be considered in light of the statutory context in which it operates." *Morrison*, 2011 WL 65737, at *4; *see also Smith v. U.S.*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context."). Nevertheless, the plain meaning of a term should control when it is apparent.  However, as Judge Waldrep astutely noted, "[t]he fact that several courts have arrived at different conclusions regarding the meaning of 'household' reveals that the term lacks a readily-apparent plain meaning." *Morrison*, at *8.

income. On the other hand, the dependents approach unnecessarily subordinates the Bankruptcy Code to the Internal Revenue Code and limits deductions only to those individuals who classify as a debtor's dependents for tax purposes. This definition would frequently skew the calculations in the opposite direction from the "heads on beds" approach, undercounting legitimate deductions due to a debtor who financially provides for individuals he or she does not claim as dependents.

The inadequacy of these two approaches is well illustrated by the Debtor's specific family situation. The "heads on beds" approach would be inconclusive for the Debtor. On the one hand, he maintains a three-bedroom apartment in order to accommodate his four children. On the other hand, these four children do not reside with him every day of the week, and typically only around four nights a week. Any determination of the number of "heads on beds" for this Debtor would be fraught with uncertainty. The IRS dependents approach would also be flawed. The Debtor has not claimed any of the children as dependents in the past, though by agreement with the mothers he hopes to be able to claim two of the children this year. If this approach were applied, the Debtor's bankruptcy case (and the proper distribution to unsecured creditors) could be hijacked by the choices the Debtor and the mothers of his children make regarding their tax returns.

In place of these flawed approaches, this Court finds that the economic unit approach to determining the size of a debtor's household most closely aligns with the purpose of 11 U.S.C. § 1325(b). A statute that aims to insure that Chapter 13 plans assign all of a debtor's projected disposable income to unsecured creditors must incorporate a definition of "household" which

aids in accurately calculating that projected disposable income.[19]  "Household" must be based on the economic reality for a given debtor.  This Court concurs with Judge Waldrep's conclusion:

> Household size should not be determined by reference to the Census Bureau's definition, the Internal Revenue Manual's definition, familial relationship, sexual relationship, or any other externally appropriated definition that at best only sometimes fits within the statutory framework of the means test.

*Morrison*, 2011 WL 65737, at *8.  Instead, the definition of "household" must be one which is flexible and accommodating to the many and varied family structures this Court encounters on a daily basis.

In modern American family life, households look increasingly different from the outmoded images of the "traditional" family.  The bankruptcy system must be able to adapt to dynamic economic change including various types of family structures regardless of size, shape, or composition.  The Bankruptcy Code must be flexible enough to accurately encompass any debtor's economic reality.

The economic reality of this Debtor is that he serves as a caring father of four children who live with him on scattered nights throughout the week on a very consistent basis.  As the Trustee acknowledged, this Debtor is working hard to provide for his children.  This Debtor is solely responsible for the medical care of one of his sons who requires significant treatment and medication.  This Debtor pays child support to the mothers of his children, but still bears the economic burden of caring for his children for more than half of any given week.  None of the mothers contributes financially to the care of the children during the days that the children spend with the Debtor each week.

---

[19] "Regardless of any unique, novel, or unexpected living arrangement involved, the economic unit approach is consistent with the goal of the means test to determine a debtor's disposable income."  *Morrison,* 2011 WL 65737, at *8.

14

The economic unit approach best encompasses this Debtor's situation, and indeed the situations of all debtors. Household size should be calculated by best estimating the number of individuals who, with the debtor, serve as a single economic unit. Focusing on the size of the functional economic unit serves as the most realistic basis for determining the size of a debtor's household.

The Debtor's situation is complicated by the children's visitation schedule; none stay with him full-time. Here, each child can best be described as a fractional member of the household.[20] In order to most accurately approximate the Debtor's overall household size, the Court will apply a functional equivalent standard for the number of persons that together comprise the economic unit. As the four children spend four-sevenths of each week with the Debtor, they mathematically approximate, when viewed in the aggregate, two full members of the economic unit.[21] Thus, this Court holds that the Debtor together with his children comprise a household of three. Accordingly, the Debtor is entitled to claim a "household" size of three for purposes of completing form B22C and for purposes of complying with 11 U.S.C. § 1325(b).

In reaching this conclusion, the Court is mindful of the recent Supreme Court decision in *Lanning*. In that case, the debtor's current monthly income was greatly inflated by a one-time buyout from her former employer. *Hamilton v. Lanning (In re Lanning)*, 130 S. Ct. 2464, 2470, 177 L. Ed. 2d 23, 31 (2010). In place of this inflated current monthly income, the debtor used her monthly income for her new job (which was significantly lower) in creating her plan. *Id.* at 2470, 177 L. Ed. 2d at 31. The bankruptcy court endorsed the debtor's proposed monthly

---

[20] A household size of five cannot be the answer as that number would seemingly capture the entire cost for the support and maintenance of the four children which would be at odds with the Debtor's continuing obligation to pay child support.

[21] $4(4/7) = 2.26$.

payment, and the Tenth Circuit Bankruptcy Appellate Panel and the Tenth Circuit each affirmed the decision. *Id.* at 2470–71, 177 L. Ed. 2d at 32. The Supreme Court affirmed the Tenth Circuit, and held that even after BAPCPA bankruptcy courts retain the discretion to depart from the mechanical approach contemplated by the language of 11 U.S.C. § 1325(b) when necessary. *Id.* at 2470, 177 L. Ed. 2d at 32–33. More specifically, the Supreme Court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478, 177 L. Ed. 2d at 39.

*Lanning* indicates that the bright-line test established in 11 U.S.C. § 1325(b) is anything but.[22] Instead, the language of the Code provides bankruptcy courts with a Congressionally-mandated starting point from which courts can (and should) add and subtract in order to reach the most accurate estimate of a debtor's projected disposable income. Similarly, the size of a given debtor's household is frequently obvious and indisputable. Nevertheless, the Bankruptcy Code retains sufficient flexibility for courts to examine the reality of a debtor's household situation and adjust the size of the household to reflect that reality. The result will only serve to better portray the actual amount of the debtor's disposable income that should be paid to unsecured creditors.

## IV

The Court does not mean to suggest that a mathematical formulation can resolve this complex definitional problem. The Court is fully cognizant of the fact that a household size of three does not properly account for the differences between the variable and fixed expenses of this Debtor's household. For instance, the expenses for food will certainly vary based on the

---

[22] Prior to *Lanning*, this Court had adopted the bright-line, mechanical approach to interpreting BAPCPA. *See, e.g.*, *In re Faison*, 416 B.R. 227 (Bankr. E.D. Va. 2008); *In re Buck*, 2007 WL 4418145 (Bankr. E.D. Va. Dec. 14, 2007); *In re Grubbs*, 2007 WL 4418146 (Bankr. E.D. Va. Dec. 14, 2007).

16

number of days the children spend with the Debtor. A household size of three accurately reflects this variable expense. However, in order to accommodate his children's routine visits, the Debtor also has to pay for a three-bedroom apartment. This fixed cost will be the same whether the children stay with the Debtor full-time or only a few nights a week. A household size of three will not reflect the real costs to the Debtor of maintaining a larger living space than he himself requires.

Form B22C contemplates such discrepancies. Line 26 of form B22C attempts to capture the fixed expenses that a debtor might incur by having to maintain a larger living space than the IRS standards would allow. The Trustee can always object if the larger living space is contrived or inappropriate. Similarly, line 36 of form B22C attempts to capture additional medical expenses such as those that the Debtor might expect to incur for the care of his youngest son. And even if these and the other expense exceptions built into form B22C prove to be insufficient to account for the Debtor's true economic needs, Line 60 of form B22C allows a debtor to list and describe any other monthly expenses not already included on the form. This line would be the appropriate place for dealing with any other fixed expenses the Debtor might routinely incur that are not otherwise captured in the household size allowance for his atypical household. Given this flexibility, the Court is satisfied having these four children each comprise roughly one half of one whole part of this Debtor's economic unit and, thus, assigning to the Debtor a household size of three. While defining a debtor's household size as the number of persons who operate as a single economic unit with the debtor helps portray a more accurate depiction of a debtor's economic reality, it realistically serves only as the starting point from which courts can add and subtract in order to determine the most accurate estimate of a debtor's projected

17

disposable income. *Hamilton v. Lanning (In re Lanning)*, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010).

## Conclusion

For the reasons stated above, the Court holds that the term "household" as used in 11 U.S.C. § 1325(b) includes the debtor and the persons who operate in the aggregate with the Debtor as an economic unit. In this case, the Debtor is wholly responsible for his four children for more than half of each week above and beyond the child support he is required to pay to the mothers of his children. Finding that the Debtor is part of, and sole provider for, an economic unit of three best depicts the realities of this Debtor's household size. Therefore, he is entitled to calculate the expenses on form B22C using a household size of three.

The Debtor variously used a household size of one and a household size of five in completing his Form B22C upon which his Plan is based and to which the Trustee objected. It would appear that reconfiguration of form B22C using a household of three, would generate a disposable income figure for this Debtor that would be substantially less than the amount of the payment the Debtor has proposed to make to his unsecured creditors in his proposed plan. Thus, the Debtor's proposed plan may very well satisfy the confirmation requirements of § 1325(b) of the Bankruptcy Code in which case the Trustee's objection should properly be overruled.

Nevertheless, the Court will order the Debtor to file an amended form B22C consistent with this memorandum opinion claiming a household of three. The Trustee will be given 14 days thereafter to renew his objection, file any further objections to the Debtor's proposed plan, or both. In the absence of any renewed objection or any further objections, the Debtor's proposed plan will be confirmed.

A separate order shall issue.

ENTERED: _____

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE